

**SO ORDERED.**

**SIGNED this 24 day of January, 2007.**

_____
A. Thomas Small
United States Bankruptcy Judge
_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:                                                    CASE NO.

SEAN JAMES GILLIGAN                                       06-00885-5-ATS

    DEBTOR

**ORDER REGARDING MOTION TO DISMISS**

The matter before the court is the bankruptcy administrator's motion, pursuant to 11 U.S.C. § 707(b), to dismiss for abuse. A hearing took place in Raleigh, North Carolina on January 10, 2007.

Sean James Gilligan filed a petition for relief under chapter 7 of the Bankruptcy Code on June 16, 2006. On July 28, 2006, the bankruptcy administrator requested the clerk to issue a notice of presumed abuse, and on July 31, 2006, a statement of presumed abuse was filed and served on all creditors. On September 13, 2006, the bankruptcy administrator filed a motion to dismiss for abuse, and the debtor filed a response on October 5, 2006.

Mr. Gilligan resides in Holly Springs, North Carolina. He has been employed by Champion Window Company for six years. Mr. Gilligan

and his fiancée, Patricia Davis, own their residence as tenants in common.  Mr. Gilligan testified that he and Ms. Davis are jointly and severally obligated on the mortgage, and they each contribute one-half of the mortgage payment each month.  Similarly, they split their utility and homeowner's association dues by half each month, generally sending two checks for one-half the amount due with each bill.  Mr. Gilligan further testified that he and Ms. Davis otherwise keep their finances completely separate, and Ms. Davis does not contribute to his other regular expenses.  It does appear that Mr. Gilligan pays more than one-half of the food and entertainment expenses.

When Mr. Gilligan completed his Statement of Current Monthly Income and Means Test Calculation, Official Form B22A, he did not include any of Ms. Davis' contributions to the household expenses in his calculation of monthly income (Form B22A, Part II, line 8).  For purposes of determining the applicable median family income and calculations of deductions, Mr. Gilligan indicated his household size is one.  However, when Mr. Gilligan made deductions for debt payment (Form B22A, Part V, Subpart C, line 42), he deducted the entire monthly mortgage payment, even though he actually pays only half each month.

The purpose of Form B22A is to determine whether a presumption of abuse arises under § 707(b)(2).  The Official Form shows the debtor's calculations as required by § 707(b)(2)(A), commonly referred to as the "means test."  According to § 707(b)(2), if a debtor's means test shows

an ability to repay some portion of his debts, then there is a presumption of abuse, and, absent special circumstances, the case must either be converted to chapter 13 or dismissed.

The bankruptcy administrator contends that Mr. Gilligan's failure to include his fiancée's contributions to the mortgage and other household expenses improperly skews the debtor's financial picture, making it appear that he cannot repay some of his debt. The bankruptcy administrator maintains that if the fiancée's contributions are added, the presumption of abuse would arise. Alternatively, the bankruptcy administrator contends that the totality of the circumstances support dismissal pursuant to § 707(b)(3).

In response, Mr. Gilligan maintains that if he includes his fiancée's contributions, he should also be allowed to deduct expenses for a household of 2, resulting still in no presumption of abuse. He further maintains that because he and his fiancée maintain separate finances, his household is one economic unit and a household of 1 is the proper choice (as opposed to the "heads on beds" interpretation advanced by some academics). Finally, Mr. Gilligan contends that if his case is converted to chapter 13, there will be no dividend to unsecured creditors required. In support of these contentions, the debtor has prepared an alternative Form B22A reflecting his fiancée's contribution to the mortgage as a regular contribution to household expenses, and a Form B22C, showing the chapter 13 analysis including

Ms. Davis' contribution. Mr. Gilligan also contends that if he passes the means test, his ability to pay cannot be considered a basis to dismiss under § 707(b)(3).

The starting point for the means test is the debtor's "current monthly income" as defined in § 101(10A). Section 101(10A)(B) provides that current monthly income "includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents," with certain specific exceptions not applicable here. 11 U.S.C. § 101(10A)(B). Clearly, Ms. Davis' contribution to the mortgage must be included in Mr. Gilligan's current monthly income. Similarly, her contribution to the homeowner's association dues, which do not vary based on the number of people residing in the property, must be included. Utilities, on the other hand, would increase as a result of a second individual residing in the house, and adding Ms. Davis' contributions to the utility cost would, as a matter of fairness, result in an allowance under the expense section of the means test for a household of 2. Accordingly, the court will not require Ms. Davis' contributions to the utility bills to be added to the debtor's income.

The only adjustment to Mr. Gilligan's Form B22A is to add $563 to the mortgage and $21 for the homeowners' association dues contribution,

4

increasing his current monthly income to $4,822.84.[1] Because the expenses remain the same, $4,733.30 is deducted to arrive at $89.54.[2] This amount is multiplied by 60, for a total of $5,372.40. Because this number is less than $6,000, no presumption of abuse arises.

Because no presumption of abuse arises under the means test, the court must consider whether there is a basis to dismiss the case under § 707(b)(3). Section 707(b)(3) requires the court to consider, in cases in which no presumption arises, "(A) whether the debtor filed the petition in bad faith; or (B) [whether] the totality of the

---

[1] There is a conflict in the documents before the court about Ms. Davis' contribution to the homeowners' association dues. Mr. Gilligan's discovery responses indicate that Ms. Davis pays $21 per month toward this expense, while his Schedule J shows that he pays $41 per month toward the dues. Mr. Gilligan could not explain this discrepancy in his testimony, and his testimony otherwise established that he and Ms. Davis split the household expenses evenly. Even if Ms. Davis contributes $41 toward the homeowners' association dues, however, Mr. Gilligan would still pass the means test. (This contribution would increase the difference between income and expenses, multiplied times 60, to an amount greater than $6,000, thus requiring the debtor to complete Form B22A lines 53-55. This further calculation still results in no presumption of abuse.)

[2] Mr. Gilligan's filed Form B22A shows expenses in the amount of $4,733.30, while his alternative Form B22A, which adds Ms. Davis' contribution to the mortgage payment, shows expenses in the amount of $4,815.30. The only itemized difference is in line 19, "National Standards: food, clothing, household supplies, personal care, and miscellaneous," which is $621 on the filed form and $703 on the alternative form. The difference arises from the increase in monthly income, as the national standards vary according to the "gross monthly income." Because it is not clear whether the term "gross monthly income" is the same as "current monthly income" (one of which includes Ms. Davis' contributions, the other may not), in re-calculating the means test, the court used the lower amount from the filed Form B22A, and Mr. Gilligan still passes the means test.

circumstances . . . of the debtor's financial situation demonstrates abuse."

Prior to the passage of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, in considering the totality of the circumstances, the court reviewed the following factors:

> (1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability or unemployment;
> (2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;
> (3) Whether the debtor's proposed family budget is excessive or unreasonable;
> (4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the debtor's true financial condition; and
> (5) Whether the petition was filed in good faith.

See In re Green, 934 F.2d 568, 572 (4th Cir. 1991). Ability to pay was often a heavily-weighted component. The debtor contends that with the enactment of § 707(b)(2), Congress standardized the ability to pay test, and determined that if the debtor passed its means test, ability to pay could not be an element in the totality of the circumstances test. The bankruptcy administrator contends that the means test establishes only a presumption, and not a final determination. She argues that where the presumption does not arise, the debtor's actual ability to pay must be assessed under § 707(b)(3).[3]

---

[3] Because Form B22A refers to standardized expenses, while Schedule J uses actual expenses, it is sometimes the case that Schedule J shows an actual ability to pay, where a presumption of abuse does not arise under the means test. The bankruptcy administrator's argument would have the court refer to the schedules in a § 707(b)(3) analysis, while the debtor contends that the schedules can never be considered in

6

In this case, there are no other elements of the totality of the circumstances that would support dismissal under § 707(b)(3). While the court will not say as a bright-line rule that ability to pay can no longer be considered under § 707(b)(3), in this case the court finds that the debtor's ability to pay does not support dismissal under § 707(b)(3).

Based on the foregoing, the bankruptcy administrator's motion to dismiss for abuse is **DENIED**.

**SO ORDERED.**

**END OF DOCUMENT**

---

an abuse analysis because of the adoption of the standardized means test.